**Richard Calvin WILLIAMS, JR.,
Appellant (Petitioner
below),**

v.

**STATE of Indiana, Appellee
(Respondent below).**

No. 45S03–0011–PC–618.

Supreme Court of Indiana.

Nov. 2, 2000.

Stephen Bower, Cohen and Thiros, Merrillville, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

### ON PETITION TO TRANSFER

SULLIVAN, Justice.

Richard Calvin Williams, Jr., was convicted of attempted murder as an accomplice. For the reasons discussed in our

recent decision, *Bethel v. State*, the jury instruction used at trial on the intent necessary to be convicted of attempted murder as an accomplice violated the rule of *Spradlin v. State*. We find Williams is entitled to the post-conviction relief he seeks.

*Background*

On the afternoon of February 17, 1991, Richard Calvin Williams was driving a Geo Tracker through Hammond, Indiana. His brother-in-law, Albert Gaines, was in the front passenger seat, and a minor, David Allen, was in the back seat.[1] Gaines, testifying for the State, stated that at some point a pickup truck, traveling in the opposite direction, swerved at them and the driver called them "niggers."

Williams turned the Geo around eventually catching up to the truck, which was driven by Scott Spotten. Williams said to Allen, "give me my gauge," referring to a 12–gauge pump shotgun that Williams kept in the back of the Geo. According to Gaines, Allen picked up the shotgun and said, " 'I'll do it,' and you know, immediately shot." (R. at 223: "We had no idea he was going to shoot the gauge for real."). Gaines then testified inconsistently as to how much time elapsed between the first and a second shot.

Gaines and other witnesses also testified inconsistently as to whether the two vehicles were stopped or moving when the shooting occurred. (This testimony was important in establishing the driver's (i.e., Williams's) intent to kill Scott Spotten. *See infra* note 5.) Gaines ultimately ac-

knowledgeable that he could not recall whether the vehicles were stopped side-by-side at a traffic light or traveling down the street. (R. at 269: *Q* : "Do you recall or if I were to suggest to you that the shooting did not take place at the light, would you dispute that?" *A* : "No, I wouldn't." *Q* : "Okay. Exactly where the shooting took place, you really do not know, do you?" *A* : "Not exactly, no." *Q* : "Okay. All you know is that the shooting took place?" *A* : "By the light somewhere, yes.").

The only other witness to the shooting, Mr. Amin, a United States postal worker, observed the shooting as he stood nearby on the street. His testimony throughout was that the shooting occurred as the vehicles were stopped in the middle of the street with their engines running.[2]

Finally, a crime scene technician testified that in his opinion the vehicles were moving when the shots were fired, but defense counsel pointed out on re-cross that the technician's original report stated the vehicles were "either stopped or in front of 833 Sibley Street." Neither Williams nor Allen, the shooter, testified.

After the shooting, it was undisputed that Williams quickly drove to his home in Gary, Indiana, and parked the Geo in the garage. Williams then switched the convertible top from black to white. Believing that Allen would be the only one charged as the shooter, Gaines told police about the incident the next day.

On February 20, 1991, Williams was

---

1. The record on direct appeal is cited as "(R. at ___)" whereas the post-conviction record is cited as "(PC R. at ___)."

2. Amin testified on direct as follows:
   Q: Where did you first notice the vehicles, where did they first come to your attention?
   A: Well, see, I was about four houses down from where they were parked. I just seen them you know.
   Q: They were parked or moving?
   A: They were parked.

   Q: Parked?
   A: Not parked, but they were just still, but I could seen them running.
   * * *
   Q: Okay. Why don't you tell me when and if you were able to see who was driving that Geo Tracker?
   A: Well, I had heard like two pops, like pop-pop. And then the Geo took off and when it took off, it was like a stop sign right on that corner.
   (R. at 143–44.)

charged with the attempted murder[3] of Scott Spotten. On November 7, 1991, a jury convicted Williams and he was sentenced to 20 years in prison.

Williams appealed his conviction, claiming, *inter alia*, that the trial court committed fundamental error[4] in not instructing the jury regarding the elements of attempted murder. The Court of Appeals affirmed his conviction. *Williams v. State*, No. 45A03–9210–CR–328, 615 N.E.2d 514 (Ind.Ct.App. June 17, 1993) (mem.). This Court denied transfer on November 4, 1993, thus ending Williams's direct appeal.[5]

On January 19, 1995, Williams filed his amended petition for post-conviction relief again claiming fundamental error in the attempted murder instruction. In his petition, Williams cited two decisions from this Court where we found fundamental error in an identical instruction.[6] In denying the petition for post-conviction relief, the post-conviction court turned to the Court of Appeals's previous ruling on the issue of

3. Ind.Code § 35–42–1–1 (1988).

4. Because he did not object to any of the instructions given at trial, Williams couched his challenge on direct appeal in terms of fundamental error to avoid waiver of the issue.

5. The Court of Appeals's memorandum decision sided with the State in finding the evidence adduced at trial sufficient to establish that Williams possessed the specific intent to kill Spotten:

   Here, the evidence demonstrates that Williams turned his vehicle around to pursue Spotten. He then requested his gun. After Allen stated that he would "do it," *Williams drove his vehicle at a pace to remain parallel with Spotten's vehicle. Once Allen had shot at Spotten, Williams did not brake or request that Allen stop his actions. Instead, Williams continued to drive at the same pace while Allen pumped the gun a second time and shot Spotten.* After the shooting, Williams did not stop to assist Spotten. Rather, Williams drove away from the scene quickly. He parked the Geo in the garage and switched the convertible top to one of another color.
   . . . .

fundamental error and determined that Williams's claim was *res judicata.*

On August 10, 1999, the Court of Appeals affirmed the post-conviction trial court's denial of Williams's petition for post-conviction relief. *Williams v. State*, 715 N.E.2d 882, 888 (Ind.Ct.App.1999). The Court of Appeals acknowledged that it had been incorrect to reject Williams's *Spradlin* claim on direct appeal, but it nevertheless held that Williams was not entitled to relief because, *as an accomplice*, Williams's "intent was not an issue," *id.*, and so the *Spradlin* rule was not implicated.

*Discussion*

I

On April 15, 1991, this Court issued its now familiar decision in *Spradlin v. State*, 569 N.E.2d 948 (Ind.1991). In *Spradlin*, we established that it was reversible error for a trial court to instruct a jury that a "knowing" mens rea was sufficient to establish guilt of attempted murder. *Id.* at 951.[7]

> The evidence is sufficient to support the conviction.
> *Williams v. State*, No. 45A03–9210–CR–328, slip op. at 5–6, 615 N.E.2d 514 (emphasis added).

6. Those decisions were *Spradlin v. State*, 569 N.E.2d 948 (Ind.1991) (granting relief on direct appeal), and *Simmons v. State*, 642 N.E.2d 511 (Ind.1994) (granting post-conviction relief). Both *Spradlin* and *Simmons* relied on our earlier decisions in *Zickefoose v. State*, 270 Ind. 618, 622, 388 N.E.2d 507, 510 (1979) (granting relief on direct appeal), and *Smith v. State*, 459 N.E.2d 355, 358 (Ind. 1984) (granting relief on direct appeal).

7. The trial court in *Spradlin* instructed the jury as follows:

   To convict the defendants, the State must have proved each of the following elements: The defendants
   1. *knowingly or intentionally*
   2. strike, stab and cut the body of Robert Grubbs
   3. that the conduct was a substantial step toward the commission of the crime of murder.
   If the State failed to prove each of these elements, you should find the defendants not guilty.

Notwithstanding our directive in *Spradlin*, the trial court used this defective attempted murder instruction – containing the problematic "knowingly or intentionally" conjunctive – nearly seven months later in Williams's November 1991 trial. The attempted murder instruction read as follows:

> A person who *knowingly or intentionally* kills another human being commits murder, a felony. A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to *commit murder is a Class A felony.*
>
> To convict the defendant of the crime of attempted murder, the State must have proved the following elements:
>
> 1. The defendant *knowingly or intentionally*
> 2. took a substantial step to accomplish
> 3. a *knowing or intentional killing* of Scott Spotten.

(emphases added).

We have consistently held that this form of attempted murder instruction misinforms a jury as to the appropriate mens rea and thus constitutes fundamental error. *See, e.g., Metcalfe v. State*, 715 N.E.2d 1236, 1237 (Ind.1999) (Fundamental *Spradlin* error consisted of an instruction informing the jury that a "knowingly" mens rea was sufficient to establish guilt of attempted murder.); *Wilson v. State*, 644 N.E.2d 555, 556 (Ind.1994) (Fundamental *Spradlin* error consisted of an instruction informing the jury that a "knowingly or intentionally" mens rea was sufficient to establish guilt of attempted murder.); *Beasley v. State*, 643 N.E.2d 346, 347 (Ind.1994) ("knowingly or intentionally"); *Greer v. State*, 643 N.E.2d 324, 325 (Ind.1994) ("knowingly or intentionally"); *Simmons v. State*, 642 N.E.2d 511, 511 (Ind.1994) ("knowingly or intentionally"); *Taylor v. State*, 616 N.E.2d 748, 749 (Ind.1993) ("knowingly"); *Hill v. State*, 615 N.E.2d 97, 98 (Ind.1993) ("knowingly or intentionally"); *Woodcox v. State*, 591 N.E.2d 1019, 1023 (Ind.1992) ("knowingly").

And although there have been cases where, despite clear *Spradlin* error, we did not vacate an attempted murder conviction because (i) the intent of the perpetrator was not a central issue at trial;[8] (ii) the instructions as a whole sufficiently suggested the requirement of intent to kill;[9] or (iii) both,[10] that is not the case here.

To the contrary, Williams's intent as a non-shooting accomplice was seriously disputed at trial, where the jury heard evidence that (1) no one was aware that Allen would impulsively fire the shotgun from the backseat; (2) the two shotgun blasts were delivered in rapid succession; and (3) the vehicles were idle and stopped on the side of the street. Moreover, nowhere in the instructions was there any statement sufficiently informing the jury of the State's burden of proving that Williams specifically intended to kill Scott Spotten.[11]

---

> If the State did prove each of these elements beyond a reasonable doubt, you should find the defendants guilty of the crime of Attempted Murder, a Class A felony.

*Id.* at 950–51 (emphasis added).

8. *See, e.g., Swallows v. State*, 674 N.E.2d 1317 (Ind.1996).

9. *See, e.g., Ramsey v. State*, 723 N.E.2d 869, 872–73 (Ind.2000).

10. *See, e.g., Jackson v. State*, 575 N.E.2d 617, 621 (Ind.1991).

11. The information, which charged Williams as the principal, was also read to the jury and likewise failed to instruct the jury as to the proper mens rea. (R. at 9; "[Officer] Ernest Macielewicz, upon oath, says that on or about February 17, 1991, in the County of Lake, State of Indiana, Richard Williams, Jr. did *knowingly or intentionally attempt to kill* Scott Spotten by shooting at Scott Spotten with a shotgun, a deadly weapon, contrary to I.C. 35–42–1–1 and IC 35–41–5–1 against the peace and dignity of the State of Indiana.") (emphasis added).

Despite this rather straightforward case of reversible *Spradlin* error, the Court of Appeals erroneously concluded in June of 1993 that no fundamental error had occurred. *Williams v. State*, No. 45A03–9210–CR–328, 615 N.E.2d 514 (Ind.Ct.App. June 17, 1993) (mem.), *transfer denied*. We can only attribute this incorrect ruling – as we have on other occasions – to the admitted confusion surrounding the proper standard for attempted murder jury instructions, which existed during this time. *See, e.g., Arthur v. State*, 663 N.E.2d 529, 531 (Ind.1996) ("At the time of the first Court of Appeals decision, this court had decided *Spradlin* but had not expressly overruled *Worley* and *Santana*. Thus, some confusion remained on the standard for attempted murder jury instructions.").

We do not revisit these previous rulings as to fundamental error for improperly instructing the jury on the elements of attempted murder and the Court of Appeals's application of the doctrine of *res judicata* to them. Instead, we address Williams's continuing argument—made in both his direct and post-conviction appeals—that the jury instructions failed "to address the legal issue of accomplice liability in an attempted murder prosecution," [12] and Court of Appeals holding on this issue that "Williams' intent was not an issue because he was convicted as an accomplice." *Williams*, 715 N.E.2d at 888.

## II

Earlier this year—after the Court of Appeals's decision in this case—we explained for the first time how *Spradlin* applies to persons "convict[ed] for the offense of *aiding an attempted murder*." *Bethel v. State*, 730 N.E.2d 1242, 1246 (Ind.2000) (emphasis added).

In *Bethel*, a jury found the defendant guilty of multiple counts of attempted robbery, robbery, and attempted murder for his participation in a two-man crime spree. On appeal, Bethel challenged the sufficiency of the evidence supporting two of his four attempted murder convictions, contending that as a *non-shooting* accomplice, he did not knowingly or intentionally aide, induce, or cause the principal *shooter* to attempt either murder.[13]

In reversing and vacating both attempted murder convictions, we employed a two-part analysis. First, we determined whether the evidence was sufficient to establish that the principal, "acting with the intent to kill, took a substantial step toward killing" either crime spree victim. *Id.* at 1245. As to the first victim, we found that the principal's intent to kill was not established beyond a reasonable doubt, thus Bethel's attempted murder conviction under an accomplice liability theory likewise could not stand.

We did, however, find sufficient evidence of the principal's intent to kill the second crime spree victim, thereby continuing on to the second half of the required two-part analysis:

> Because we find sufficient evidence of [the principals] intent to kill [the second victim], we must consider the defendants claim that the evidence was insufficient to prove that he knowingly or intentionally aided, induced, or caused [the principal] to commit the attempted murder of [the second victim]. The accomplice liability statute permits a defendant to

---

12. See Appellant's Br. in Support of Petition to Transfer at 8.

13. The basic evidence surrounding the two vacated attempted murder convictions was as follows: (1) Bethel and principal, Curtis Crenshaw, had unsuccessfully attempted to rob a dairy mart. As they fled the store, Crenshaw shot his gun in some unascertained direction as two store employees lay behind an ice machine outside the store. (2) Minutes later, the two men had just successfully robbed a fast food restaurant when a customer approached the store. Crenshaw pointed his gun at him and the customer fled. The two men pursued the customer outside and Crenshaw shot his gun in the direction of the customer, who had taken refuge in his van at the opposite end of the parking lot. *Bethel*, 730 N.E.2d at 1243–44.

be found guilty as an accomplice without the jury finding that the defendant committed every element of the crime when that defendant knowingly or intentionally aids, induces, or causes another person to commit an offense. Ind.Code 35–41–2–4. For many crimes, it is sufficient to prove that a defendant either knowingly or intentionally performed a prohibited act. It is well settled, however, that a conviction for attempted murder requires proof of specific intent to kill. *See Spradlin v. State,* 569 N.E.2d 948, 950 (Ind.1991). *The issue becomes then, what must be proven in order to show that the defendant knowingly or intentionally aided the commission of a crime requiring specific intent for conviction?*

In light of *Spradlin*'s requirement that attempted murder be established by proof of specific intent to kill, we find that, in order to establish that a defendant aided, induced, or caused an accomplice to commit attempted murder, *the State must prove that the defendant, with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused [the principal] to commit the crime of attempted murder.* Thus, to convict for the offense of *aiding an attempted murder,* the State must prove: (1) that the [principal], acting with the specific intent to kill, took a substantial step toward the commission of murder, and (2) that the defendant, acting with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused the [principal] to commit the crime of attempted murder.

*Id.* at 1245–46 (emphases added).

■ Therefore, the jury in Williams's case was misinformed in two critical respects, the combination of which unacceptably lessened the State's burden of proof. First and foremost, the jury was not properly instructed as to the basic elements of

attempted murder. This issue has been argued and decided adverse to Williams (albeit wrongly) such that it is *res judicata. Williams v. State,* No. 45A03–9210–CR–328, slip op. at 5, 615 N.E.2d 514 (Ind.Ct.App. June 17, 1993) (mem.) ("Accordingly, the instructions in the present case adequately included a finding that Williams, not just [the principal,] Allen, had a specific intent to kill the victim. No error occurred.").

Second, the jury was never instructed that it had to find that Williams, as a *non-shooting accomplice,* acted with the specific intent to kill the victim. Instead, it was instructed that to find Williams guilty of aiding an attempted murder, it need only determine that he *knowingly or intentionally* aid[ed], induce[d], or cause[d] another person to commit the crime of attempted murder. (R. at 58; Final Instruction No. 8) (emphasis added). While this was a correct statement of the law as it generally pertained to accomplice liability, it fell significantly short of adequately instructing the jury in this case given that the trial court had already failed to instruct on the basic elements of attempted murder.

In the typical attempted murder prosecution involving an armed robbery or some other criminal enterprise gone awry, the accomplice is criminally liable for the acts done by [the accomplices] confederates which were a probable and natural consequence of their common plan, and the intent to kill is properly inferred from the knife-wielding or shooting principal. *Bonds v. State,* 721 N.E.2d 1238, 1242 (Ind.1999) (quoting *Edgecomb v. State,* 673 N.E.2d 1185, 1193 (Ind.1996)). But this is not the typical case. Here, a chance encounter led to the spontaneous firing of two shots from the back seat of Williams's automobile, and the instructions as a whole never informed the jury that either the backseat principal or Williams had to possess the specific intent to kill the victim.[14]

14. Although we need not revisit any prior decisions here, we note that this case is factu-

ally unlike our decision in *Arthur v. State,* 663 N.E.2d 529, 531–32 (Ind.1996), where we

We have recognized the inherent ambiguity in attempted murder prosecutions and the need to instruct juries precisely as to the correct level of culpability. *Richeson v. State*, 704 N.E.2d 1008, 1010 (Ind. 1998) ("In many attempted murder cases, however, the victim, the result, or both, are more difficult to ascertain. A drive-by shooting is the paradigm problematic attempted murder case. In such cases it is often unclear whether the defendant intended to murder or to batter, whether he knew of a high probability of death or a touching, or whether he simply recklessly disregarded either."). And both the level of ambiguity and the corresponding need for precise jury instructions significantly increase in a prosecution for aiding an attempted murder.

■ Williams was entitled to have the jury instructed correctly on an essential rule of law. *See Hill v. State*, 615 N.E.2d 97, 99 (Ind.1993). And as *Bethel* reinforces, the requirements of *Spradlin* equally apply to those on trial for attempted murder and for aiding an attempted murder. *Bethel*, 730 N.E.2d at 1246.

Although Williams has consistently argued that his intent as an accomplice could not be imputed from the principals actions given that [n]one of the instructions tell the jury that Williams must have the specific intent to kill, *see* Appellant's Brief at 13 (Direct Appeal) (filed Dec. 23, 1992), the Court of Appeals never expressly ruled on this issue in the course of deciding Williams's direct appeal. *See Williams v. State*, No. 45A03–9210–CR–328, slip op. at 5, 615 N.E.2d 514.[15] And in retrospect, the Court of Appeals could not have issued a secondary ruling—incorrect or otherwise—addressing the requirement of specific intent in the *accomplice liability* instructions given that the court had failed to recognize *Spradlin* as controlling precedent for requiring specific intent in the *attempted murder* instruction.

■ It is difficult if not impossible to see how Williams received a fair trial when the jury could have convicted him of knowingly (rather than intentionally) aiding the principal in knowingly (rather than intentionally) attempting to kill Scott Spotten. As such, we now hold that the trial court committed fundamental error in not instructing the jury that it had to find that Williams possessed the specific intent to kill when he knowingly or intentionally aided, induced, or caused his backseat accomplice to commit the crime of attempted murder. *Cf. Bethel*, 730 N.E.2d at 1246 (In light of *Spradlin*'s requirement that attempted murder be established by proof of specific intent to kill, we find that, in order to establish that a defendant aided, induced, or caused an accomplice to commit attempted murder, the State must prove that the defendant, with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused his accomplice to commit the crime of attempted murder.).[16]

15. Instead, the Court of Appeals found that the trial court's attempted murder "instruction required that Williams possess the specific intent to kill Spotten. Such *specific intent was not negated by other [accomplice liability] instructions* which informed the jury that acts committed by a confederate may be attributable to others when the evidence demonstrates that those present acted in union." *Williams v. State*, No. 45A03–9210–CR–328, slip op. at 5, 615 N.E.2d 514 (emphasis added).

16. New rules of criminal procedure are generally not available on collateral review. *Daniels v. State*, 561 N.E.2d 487, 488–89 (1990). It is well-settled, however, that

concluded that an erroneous ruling approving a similarly defective attempted murder instruction did not result in manifest injustice. In *Arthur*, the defendant was in fact the knife-wielding principal, and the evidence of his intent to kill was not an issue at trial. *See id.* at 531 n. 2 ("The facts of the case included the following: 'While [the victim] was in the phone booth talking on the phone, Appellant stabbed him in the chest with a knife. Appellant continued to stab at [the victim] as he tried to close the phone booth door to protect himself. Even after [the victim] had the door closed, Appellant continued striking at the glass with his knife.'") (alterations in original) (quoting *Arthur v. State*, 499 N.E.2d 746, 747 (Ind.1986)).

■ Because we cannot say that Williams did not suffer harm as a result of the compound error associated with not instructing the jury as to specific intent of either principal or accomplice, we vacate Williams's conviction under an accomplice liability theory for attempted murder.

### Conclusion

Accordingly, we now grant transfer, vacate the opinion of the Court of Appeals, reverse the post-conviction trial court, grant Williams's petition for post-conviction relief, and remand to the original trial court for a new trial.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.

*Spradlin* did not announce a new rule of criminal procedure but instead explained what the law already was at the time we decided *Spradlin*. *Simmons v. State*, 642 N.E.2d 511, 513 (Ind.1994) (citing *Smith v. State*, 459 N.E.2d 355, 358 (Ind.1984)).

In a similar fashion, *Bethel* did not announce a new rule of criminal procedure but rather explained what the State was already required to prove to gain a conviction for attempted murder under a complicity theory or otherwise: [T]he same specific intent to kill must be shown for an attempted murder as for the crime of murder. *Zickefoose v. State*, 270 Ind. 618, 620, 388 N.E.2d 507, 509 (1979).