Keith WOODSON, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 49A04–0109–PC–396.

Court of Appeals of Indiana.

May 17, 2002.

Susan K. Carpenter, Public Defender of Indiana, John Ribble, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Keith Woodson was convicted of two counts of attempted murder as an accomplice,[1] a Class A felony. On direct appeal, this court rejected Woodson's claims of prosecutorial misconduct and insufficiency of the evidence and affirmed his convictions in an unpublished memorandum decision. *Woodson v. State*, 647 N.E.2d 705 (Ind.Ct.App.1995). Woodson filed a pro se petition for post-conviction relief, which was later amended with the assistance of counsel. The post-conviction court denied the petition and Woodson now appeals raising two issues for our review: 1) whether the trial court committed fundamental error when it instructed the jury on the elements of attempted murder as an accomplice; and 2) whether Woodson received ineffective assistance of both trial and appellate counsel. We address only the dispositive first issue.

We reverse the decision of the post-conviction court, grant Woodson's petition for post-conviction relief, and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the judgment and recited by this court on direct appeal reveal that on March 23, 1993, Anthony Tigner and Roman Brown were traveling in Brown's car when they saw Woodson, Brian Chambers, and Doren Douthit in Woodson's car. Brown pulled alongside Woodson's car, and Tigner asked Woodson about one hundred dollars Woodson allegedly owed him. The men exited their cars, and Tigner and Woodson began to physically fight about the money.

After the fight, Woodson drove Tigner and Douthit to Woodson's aunt's house, ostensibly to get the money. Chambers and Brown followed in Brown's car. Woodson went into the house alone and returned without the money. The five men then returned to their original cars, and Brown and Woodson drove off in different directions. While driving around after the incident, Woodson, referring to Brown and Tigner, said that he was "going to get them." *Trial Record* at 300, 301.

Later the same day, Woodson saw Brown's car in front of a barbershop. As Woodson drove alongside, Brown and Tigner exited their car and walked toward the shop. Chambers, who was in the passenger seat of Woodson's car, held a gun out the window. Tigner, seeing the gun, said, "I guess you get ready to shoot me over this." *Id.* at 166. Chambers told Tigner to back up and, as Tigner began to do so, Woodson ordered Chambers several times to "shoot him." *Id.* at 167, 304–05. Chambers then shot Tigner in the back, and Brown began to run. With Brown on foot, Woodson followed in his car, and Chambers shot at Brown striking him in the leg.

Chambers and Woodson were tried together. All parties agreed that Chambers was the one who shot the victims; therefore, Woodson was tried as an accomplice to the attempted murders of Tigner and

---

**1.** *See* IC 35–41–2–4; IC 35–41–5–1; IC 35–42–1–1.

Brown. During the trial, Chambers testified that he did not aim the gun and that he had no intention of shooting either victim. *Id.* at 416–417. Chambers further testified that Woodson did not know Chambers had a gun and did not tell him to shoot. *Id.* at 417, 446. Chambers testified that he shot the gun only to defend himself from Tigner and Brown. *Id.* at 417. Woodson did not testify at the trial.

The jury found Woodson guilty of two counts of attempted murder as an accomplice, and his convictions were upheld on direct appeal. Woodson's petition for post-conviction relief was denied, and he now appeals.

## DISCUSSION AND DECISION

■ Our court will not set aside the trial court's denial of a post-conviction petition unless "'the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court.'" *Ben–Yisrayl v. State,* 753 N.E.2d 649, 653 (Ind.2001), *petition for cert. filed* (U.S. Feb. 1, 2002) (No. 01–8443) (quoting *Weatherford v. State,* 619 N.E.2d 915, 917 (Ind.1993)); *Lambert v. State,* 743 N.E.2d 719, 726 (Ind.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 1082, 151 L.Ed.2d 982 (2002); *Miller v. State,* 702 N.E.2d 1053, 1058 (Ind.1998), *cert. denied,* 528 U.S. 1083, 120 S.Ct. 806, 145 L.Ed.2d 679 (2000). In making this determination, we consider only the evidence that supports the decision of the post-conviction court, together with any reasonable inferences to be drawn therefrom. *Badelle v. State,* 754 N.E.2d 510, 521 (Ind.Ct.App. 2001), *trans. denied.*

■ Post-conviction procedures do not provide a petitioner with an opportunity to present freestanding claims that contend the original trial court committed error. *Wrinkles v. State,* 749 N.E.2d 1179, 1187 n. 3 (Ind.2001), *cert. denied,* —— U.S. ——,

122 S.Ct. 1610, —— L.Ed.2d ——, 2002 WL 634145 (April 22, 2002) (citing *Lambert,* 743 N.E.2d at 726). Claims that were available on direct appeal but not presented are waived for post-conviction review unless the claimed error is fundamental. *Id.* (citing *Conner v. State,* 711 N.E.2d 1238, 1246 (Ind.1999), *cert. denied,* 531 U.S. 829, 121 S.Ct. 81, 148 L.Ed.2d 43 (2000)). Fundamental error is a substantial, blatant violation of due process, which must be so prejudicial to the rights of a defendant as to make a fair trial impossible. *Hopkins v. State,* 759 N.E.2d 633, 638 (Ind.2001); *Carter v. State,* 738 N.E.2d 665, 677 (Ind.2000); *Charlton v. State,* 702 N.E.2d 1045, 1051 (Ind.1998).

■ Woodson contends now, as he did before the post-conviction court, that the trial court erred when it failed to inform the jury that to find him guilty of attempted murder as an accomplice, the jury had to find that he had the intent to kill the victims. *Appellant's Brief* at 19. At trial, counsel failed to object to the instructions and the issue was not raised on direct appeal. To avoid waiver, Woodson claims that this error was fundamental.

Our supreme court has clarified that the fundamental error exception to waiver is narrower in a post-conviction action than it is on direct appeal. *Taylor v. State,* 717 N.E.2d 90, 93–94 (Ind.1999). The *Taylor* court, quoting a previous opinion, noted:

> While concerns over due process do sometimes merit invocation of a fundamental error exception to the contemporaneous objection rule *on direct appeal,* we think its availability as an exception to the waiver rule in post-conviction proceedings is generally limited to those circumstances we set forth in *Bailey v. State,* 472 N.E.2d 1260, 1263 (Ind.1985): "[D]eprivation of the Sixth Amendment right to effective assistance of counsel,

or ... an issue demonstrably unavailable to the petitioner at the time of his [or her] trial and direct appeal."

*Id.* at 94 (quoting *Canaan v. State,* 683 N.E.2d 227, 235–36 n. 6 (Ind.1997), *cert. denied,* 524 U.S. 906, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998)). As explained below, Woodson's claim of fundamental error in the accomplice instruction was not available at the time of his trial or on direct appeal because *Bethel v. State,* 730 N.E.2d 1242 (Ind.2000) and its progeny, the cases supporting his argument, were yet to be decided. *See Baxter v. State,* 689 N.E.2d 1254, 1257 (Ind.Ct.App.1997) (failure to raise issue does not constitute waiver in post-conviction proceeding when the principle of law upon which it relies was not established at the time of direct appeal); *Brown v. State,* 587 N.E.2d 693, 698 (Ind. Ct.App.1992) (no waiver in post-conviction proceeding when case law relied upon was not published until after direct appeal).

At Woodson's trial, the final instructions to the jury on the attempted murder charge were as follows:

> In this case the Defendants, Keith Woodson and Brian Chambers, are charged with the offense of attempted murder, a Class A felony, in Counts One and Two of the Information. The crime of "attempt" is defined by statute as follows: A person attempts to commit a crime when acting with the culpability required for the commission of the crime he engages in conduct that constitutes a substantial step toward the commission of the crime. The crime of "murder" is defined by statute as follows: A person who knowingly or intentionally kills another human being commits the crime of murder, a felony. To convict the Defendants, Keith Woodson and Brian Chambers, of the crime of attempted murder, a Class A felony, as charged in Count One [Count Two] of the Information, the State must have proven each of the following elements: The Defendant, one; acting with specific intent to murder another human being, two; engaged in a conduct, that is, shot at and against the person of Anthony Tigner [Roman Brown] by means of a deadly weapon, that is a handgun, and, three; all of this was a substantial step toward knowingly killing another human being, Anthony Tigner [Roman Brown]. If the State failed to prove each of these elements beyond a reasonable doubt you should find the Defendants not guilty. If the State did prove each of these elements beyond a reasonable doubt you should find the Defendants guilty of attempted murder, a Class A felony.

*Petitioner's Exhibit* B (Transcript of Final Instructions Read by the Court) at 4–5. As the bracketed language reveals, the trial court read this same instruction twice, once for Count One with Tigner as the victim and a second time for Count Two with Brown as the victim.

There was no dispute that Chambers was the shooter. Thus, in order to find Woodson guilty of attempted murder, the trial court gave the following instruction on accomplice liability:

> The State of Indiana has charged the Defendant Keith Woodson as an accomplice. Under the law of Indiana a person who knowingly or intentionally aid[s], induces or causes another person to commit an offense commits that offense even if the other person has not been prosecuted for the offense, has not been convicted of the offense, or has been acquitted of the offense. To "aid" under the law is to knowingly aid, support, help, or assist in the commission of a crime. It is the being present at the time and place and knowingly doing some act to render aid to the actual perpetrator of the crime though without

taking a direct share in its commission that makes an individual responsible as an accomplice.

*Id.* at 7–8.[2]

The stringent penalties imposed for attempted murder and the ambiguity often involved in its proof led our supreme court to single out this crime for special treatment. *Hopkins*, 759 N.E.2d at 637 (citing *Richeson v. State*, 704 N.E.2d 1008 (Ind. 1998)). In *Ramsey v. State*, 723 N.E.2d 869 (Ind.2000), the court discussed the development of the attempted murder jurisprudence as follows:

> Two decades ago, we explained the importance of the defendant possessing the specific intent to kill as a necessary element of attempted murder. *Zickefoose v. State*, 270 Ind. 618, 622, 388 N.E.2d 507, 510 (1979). We later explained that [t]he attempt must be to effect the proscribed result and not merely to engage in proscribed conduct. An instruction which correctly sets forth the elements of attempted murder *requires an explanation* that the act must have been done with the specific intent to kill.
>
> *Smith v. State*, 459 N.E.2d 355, 358 (Ind. 1984) (emphasis added). In 1991, we reaffirmed that attempted murder instructions must include the required mens rea of specific intent to kill. *Spradlin v. State*, 569 N.E.2d 948, 950 (Ind.1991) (holding that to convict a defendant of attempted murder, the defendant must have intended to kill the victim at the time the defendant took a

substantial step toward committing murder).

*Ramsey*, 723 N.E.2d at 871–72.

*Spradlin* error results when an attempted murder instruction lacks reference to the requisite intent to kill. Despite finding clear *Spradlin* error, our supreme court has upheld attempted murder convictions when: (1) the intent of the perpetrator was not a central issue at trial; (2) the instructions as a whole sufficiently suggested the requirement of intent to kill; or (3) both. *Williams v. State*, 737 N.E.2d 734, 737 (Ind.2000). Therefore, fundamental *Spradlin* error arises when both the intent of the defendant is at issue and the attempted murder instruction as a whole fails to inform the jury of the need to find that the defendant intended to kill the victim when he took the substantial step toward committing the murder. *Id.*

Our supreme court's mandate in *Spradlin* that a jury be instructed to find "specific intent to kill" in an attempted murder conviction was extended in *Bethel* to convictions for attempted murder as an *accomplice*. The *Bethel* court held that to be convicted as an accomplice the State must prove:

> (1) that the [principal], acting with the specific intent to kill, took a substantial step toward the commission of murder, and
>
> (2) that the defendant, acting with the specific intent that the killing occur, knowingly or intentionally aided, induced, or caused the [principal] to

**2.** Woodson's information and amended information contained no charge of acting as an accomplice. The "Indiana statute governing accomplice liability does not establish it as a separate crime, but merely as a separate basis of liability for the crime charged." *Hampton v. State*, 719 N.E.2d 803, 807 (Ind.1999) (citing IC 35–41–2–4 (1998); *Voss v. State*, 469 N.E.2d 788, 791 (Ind.Ct.App.1984)). "Where the facts in the case raise a reasonable inference that the crime was carried out with an accomplice, it is appropriate for the judge to give such an instruction." *Id.* (citing *Wright v. State*, 690 N.E.2d 1098, 1104 (Ind.1997)). Because the facts in the case before us raise just such a reasonable inference, it was proper to instruct the jury on accomplice liability.

commit the crime of attempted murder.

*Bethel,* 730 N.E.2d at 1246.

In *Williams,* our supreme court analyzed an accomplice instruction for attempted murder in a post-conviction review. Citing to the reasoning in *Bethel,* the court found that the jury instruction used at trial on the intent necessary to be convicted of attempted murder as an accomplice violated the rule of *Spradlin. Williams,* 737 N.E.2d at 735. As such, the court concluded that the post-conviction court erred in denying relief when the jury had not been informed that in order to find Williams guilty as a non-shooting accomplice, it had to find that he "acted with the specific intent to kill the victim." *Williams,* 737 N.E.2d at 739.

Most recently, our supreme court applied *Spradlin* reasoning in the direct appeal of a defendant who was found guilty both for attempted murder and for attempted murder as an accomplice. *Hopkins,* 759 N.E.2d at 637. The *Hopkins* court, also citing to *Bethel,* affirmed Hopkins's convictions for attempted murder but reversed his conviction. as an accomplice concluding that his intent to kill was squarely at issue and the jury had not been properly instructed of the need to find that, as the accomplice, he possessed the specific intent to kill the victim. *Id.* at 639.

Woodson's post-conviction trial court made extensive findings of fact and conclusions of law. *Appellant's Appendix* at 46–62. The court set forth the jury instructions on attempted murder and accomplice liability and, citing *Spradlin,* noted that "a trial court must instruct a jury that a defendant must have the specific intent to commit murder in order to be found guilty of attempted murder." *Id.* at 52. The court then proceeded to analyze Woodson's jury instructions in light of *Ramsey, Yer-*

*den v. State,* 682 N.E.2d 1283 (Ind.1997), and *Booker v. State,* 741 N.E.2d 748, 754 (Ind.Ct.App.2000)—cases applying the *Spradlin* reasoning to specific language in attempted murder instructions. The court concluded that the trial court improperly instructed the jury by using the word "knowingly" but that this error did not rise to the level of fundamental error and did not require reversal of Woodson's convictions. *Id.* at 57. The post-conviction court was thorough in its examination of fundamental error for the attempted murder instruction but, possibly because of the then-evolving nature of the *Bethel* line of cases, failed to analyze Woodson's unique status of being an accomplice in the context of attempted murder.

Woodson was convicted of two counts of attempted murder. As a non-shooting accomplice, Woodson's intent was seriously in dispute at trial. It was clear that Woodson and Tigner had a disagreement over one hundred dollars owed by Woodson to Tigner, and that they fought over the money and then drove together to Woodson's aunt's house. The evidence on Woodson's intent was conflicting. Douthit testified that Woodson was mad and said that he would get Tigner and Brown. He also testified that, upon seeing Tigner and Brown, Woodson told Chambers to shoot. Chambers, who shot the gun, testified that he did not intend to shoot the victims, that Woodson did not know he had the gun, and that Woodson did not tell him to shoot the victims.

The accomplice instruction given at trial provided that "a person who *knowingly* or intentionally aid[s], induces or causes another person to commit an offense commits that offense. . . ." *Petitioner's Exhibit* B at 7–8 (emphasis added). The instruction further provided that "[t]o 'aid' under the law is to *knowingly* aid, support, help, or

assist in the commission of a crime." *Id.* at 8 (emphasis added). It was error for the court to instruct that Woodson could be found guilty for knowingly aiding in the attempted murder without also informing the jury of the need to find that when he aided he had the "specific intent to kill." This error compounded the existing error in the attempted murder instructions and could have allowed the jury to "convict[ ] him of knowingly (rather than intentionally) aiding the principal in knowingly (rather than intentionally) attempting to kill [Brown and Tigner]." *Williams,* 737 N.E.2d at 740. Although the State presented sufficient evidence from which a jury could have concluded that Woodson intended to kill the victims when he acted as an accomplice, the compounded error in the instructions constituted a substantial, blatant violation of his due process. *See Hopkins,* 759 N.E.2d at 638.

*Bethel, Williams,* and *Hopkins* compel us to find fundamental *Spradlin* error when an *accomplice's* intent to kill is squarely at issue and the jury instructions fail to inform the jury of the need to find the *accomplice had the specific intent to kill* when he took the steps to help the principal. Under this supreme court mandate, we reverse the post-conviction court's finding of no fundamental error and grant Woodson's petition for post-conviction relief.

■ The State argues that, because *Bethel* and its progeny had not been decided when Woodson was convicted and appealed, these cases should not apply retroactively. *Appellee's Brief* at 10. Our court's reasoning in *State v. Anderson,* 751 N.E.2d 714 (Ind.Ct.App.2001) and *Brown v. State,* 587 N.E.2d 693 (Ind.Ct.App.1992) persuades us otherwise. *See Beeks v. State,* 721 N.E.2d 339, 341 (Ind.Ct.App.

1999), *trans. denied* (2000) (applying the retroactivity rule set forth in *Brown*).

In *Anderson,* our court addressed a similar question of retroactive application. The *Spradlin* line of cases had not been decided when Anderson was convicted of attempted murder or during his direct appeal. The *Anderson* court addressed whether these holdings could be applied retroactively to his jury instruction, which failed to inform the jury that "intent to kill" was required for his conviction. Citing reasoning in *Brown,* the *Anderson* court noted that retroactive application of a new rule is permitted "when the new rule involves procedures without which the likelihood of an accurate conviction is seriously diminished." *Anderson,* 751 N.E.2d at 718 (citing *Brown,* 587 N.E.2d at 698 and *Daniels v. State,* 561 N.E.2d 487, 490 (Ind.1990)). The giving of proper instructions is a "procedure" within the context of *Anderson.* The court in *Brown* found that the retroactivity test was met because the failure to instruct on the specific intent element of attempted murder likely affected the accuracy of the verdict. *Id.* Following the reasoning in *Brown,* the *Anderson* court also applied the specific intent requirement retroactively because a "failure to instruct the jury on the key element of intent in an attempted murder case seriously undermines the accuracy of the verdict." *Id.*

Similar to *Anderson,* the jury in this case was not adequately instructed that as an accomplice Woodson had to have had the specific intent to kill the victims when he aided, induced, or caused Chambers to commit the crime of attempted murder. This failure to instruct the jury on the key element of intent in a case charging attempted murder as an accomplice seriously undermines the accuracy of the verdict and allows the case law established in *Bethel, Williams,* and *Hopkins* to be applied

 

retroactively.[3]

Woodson's intent was central to the issue at trial. Although correctly determining that the language in the attempted murder instruction did not constitute fundamental error, the post-conviction court failed to address the question of fundamental error in the accomplice instruction. Under the mandate of our supreme court's reasoning in *Bethel, Williams,* and *Hopkins,* we find that the compound errors of instructing on "knowingly" in the attempted murder and accomplice instruction and the omission of the requirement of specific intent to kill together constituted fundamental error. The evidence as a whole leads unerringly and unmistakably to a conclusion opposite to the post-conviction court's denial of Woodson's petition. Therefore, we reverse the post-conviction court, grant Woodson's petition for post-conviction relief, and remand to the original trial court for a new trial.[4]

Reversed, petition for post-conviction relief granted, and remanded for a new trial.

SULLIVAN and ROBB, JJ., concur.

---

**3.** *Bethel,* although decided in 2000, was applied retroactively in *Williams* to 1991 jury instructions. *Williams,* 737 N.E.2d at 738. Williams was convicted of attempted murder as an accomplice. Williams's instructions failed to inform the jury that he must have acted with the specific intent to kill. In his petition for post-conviction relief, Williams argued that his petition should be granted on the basis that his jury instruction failed to state the necessary intent. Our supreme court applied the *Bethel* rule without comment as to retroactivity and granted Williams's petition.

**4.** Woodson also raises the issue that trial and appellate counsel were ineffective for not objecting to the attempted murder and accomplice liability instructions. Although we need not reach this issue to decide the case before us, we note that "an ineffective assistance claim cannot be based on counsel's failure to argue the legal reasoning of cases not yet decided at the time of trial." *Shaffer v. State,* 674 N.E.2d 1, 7 (Ind.Ct.App.1996), *trans. denied* (1997) (citing *Jarrett v. State,* 580 N.E.2d 245, 250 (Ind.Ct.App.1991), *trans. denied* (1992) (counsel's failure to object to admission of testimony on basis of legal reasoning of case not decided at time of trial not ineffective assistance)).