

FILED

Apr 04 2018, 10:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Jonathan O. Chenoweth
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Edward Ivy,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

April 4, 2018

Court of Appeals Case No.
82A04-1711-PC-2506

Appeal from the Vanderburgh
Superior Court

The Honorable Robert J. Pigman,
Judge

Trial Court Cause No.
82D03-1503-PC-1540

**Baker, Judge.**

[1] Edward Ivy appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court should have found that he received the ineffective assistance of both trial and appellate counsel. Finding that Ivy received the ineffective assistance of trial counsel, we vacate his attempted murder conviction, reverse, and remand for further proceedings.

## Facts

[2] The underlying facts, as described by this Court in Ivy's direct appeal, are as follows:

> On October 28, 2013, Jerald Clark was at home watching football with his friend, Robert Drake, when someone knocked on his front door. When Clark asked who it was, Ivy identified himself. Clark opened the door and let in Ivy and Antwain Russell, both of whom Clark had known for approximately one year. Clark sat down with his back toward Ivy and Russell, and began texting on his phone. Russell then approached Clark from behind and stabbed him with a knife. Russell told Clark, "you are going to leave my brother alone: Bitch I killed you this time you MF, you're a dead MF." Tr. at 18. Russell stabbed Clark multiple times. When Drake tried to stand up to help, Ivy pointed a gun at the back of his head and said, "[D]on't move." *Id.* at 199. Clark managed to push Russell aside and escape the residence. Ivy and Russell fled through the back door of the residence and chased after Clark. Clark made it to a neighbor's residence. The neighbor observed that blood was "pouring" and "squirting" out of Clark's neck, and "gushing" out of his arm and his back. *Id.* at 69–70. The neighbor called 911. When Clark arrived at the hospital, he was gray, unresponsive, and had no pulse. Emergency room personnel revived Clark with chest compressions. While at the hospital, Clark lost vital signs on at least one other occasion and had to be revived again.

Clark underwent surgery and remained in the hospital for approximately two and one-half weeks.

The State charged Ivy with class A felony attempted murder and class C felony intimidation. The State also charged Ivy with being a habitual offender. A jury trial was held on February 18 and 19, 2014.

*Ivy v. State*, No. 82A01-1404-CR-175, at \*1 (Ind. Ct. App. Oct. 10, 2014). At trial, Ivy conceded that Russell had tried to kill Clark and that Ivy may have aided Russell by holding the gun on Drake, but argued that Ivy had not acted with the requisite culpability to be found guilty of attempted murder as an accomplice.

[3] When instructing the jury prior to deliberation, the trial court gave two instructions that are relevant to this appeal. Final Instruction Three stated as follows:

> The Crime charged in Count I, Attempted Murder, is defined by statute as follows:
>
> A person attempts to commit a murder when, acting with the specific intent to kill another person, he engages in conduct that constitutes a substantial step toward killing that person.
>
> Before you may convict the Defendant the State must have proved each of the following elements beyond a reasonable doubt:
>
> The Defendant:

1.   Acting with the specific intent to kill Jerald Clark, Jr.

2.   Did attempt the crime of Murder by knowingly stab [sic] Jerald Clark, Jr. with a knife.

3.   Which was conduct constituted [sic] a substantial step toward the commission of the intended crime of Murder.

If the State failed to prove each of these elements beyond a reasonable doubt you should find the Defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the Defendant guilty of Attempted Murder, a Class A felony.

Appellant's Direct Appeal App. p. 39. Final Instruction Nine stated as follows:

A person who knowingly or intentionally aids another in committing a crime is guilty of that crime. In order to commit a crime of aiding, a person must have knowledge that he is aiding the commission of the crime. To be guilty, he does not have to personally participate in the crime nor does he have to be present when the crime is committed. Mere presence alone is not sufficient to prove the Defendant aided the crime. Failure to oppose the commission of the crime alone is also insufficient to prove that the Defendant aided the crime. However presence at the scene of the crime and failure to oppose the crime's commission are factors which may be considered in determining whether there was [sic] aiding another to commit the crime. Before you can convict the Defendant as an accessory the State must prove the elements of the crime and that the Defendant knowingly or intentionally aided another to commit the crime.

*Id.* at 47. Trial counsel did not object to the final jury instructions, nor did counsel tender an instruction regarding accomplice liability for attempted murder.

[4] The jury found Ivy guilty as charged. The State also alleged that Ivy was an habitual offender; Ivy admitted to that allegation and the trial court proceeded to sentencing. The trial court sentenced Ivy to thirty-five years for attempted murder and enhanced that sentence by thirty years for the habitual offender filing, and to a concurrent five-year term for intimidation, for an aggregate sentence of sixty-five years. Ivy appealed, raising the sole argument that the evidence was insufficient to support the attempted murder conviction. This Court affirmed. *Ivy*, No. 82A01-1404-CR-175, at *2.

[5] On February 23, 2015, Ivy filed a pro se petition for post-conviction relief, which was later amended by counsel on April 18, 2017. Ivy claimed that both trial and appellate counsel were ineffective for, among other things, failing to object to the jury instructions and raise the issue of jury instructions on appeal, respectively. Following a hearing, the post-conviction court denied Ivy's petition on October 5, 2017. Ivy now appeals.

## Discussion and Decision

## I. Standard of Review

[6] The general rules regarding the review of a ruling on a petition for post-conviction relief are well established:

"The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). "When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quotation omitted).

*Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014).

[7] A claim of ineffective assistance of trial counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant such that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 763 N.E.2d 441, 444 (Ind. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "A reasonable probability arises when there is a 'probability sufficient to undermine confidence in the outcome.'" *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). "Failure to satisfy either of the two

prongs will cause the claim to fail." *Gulzar v. State*, 971 N.E.2d 1258, 1261 (Ind. Ct. App. 2012). To establish ineffective assistance for failure to object, the petitioner must establish that the objection would have been sustained and that the petitioner was prejudiced by the failure to object. *Law v. State*, 797 N.E.2d 1157, 1164 (Ind. Ct. App. 2003).

# II.  Assistance of Trial Counsel

[8]  Ivy contends that trial counsel was ineffective for failing to object to the jury instructions, which he argues were incomplete and insufficient, and for failing to tender a proper instruction regarding accomplice liability for attempted murder.

# A.  Applicable Law

[9]  Here, Ivy was charged with attempted murder as an accomplice. Our Supreme Court has explained how this charge must be proved as follows:

> in order to establish that a defendant aided, induced, or caused an accomplice to commit attempted murder, the State must prove that the defendant, *with the specific intent that the killing occur*, knowingly or intentionally aided, induced, or caused his accomplice to commit the crime of attempted murder. Thus, to convict for the offense of aiding an attempted murder, the State must prove: (1) that the accomplice, acting with the specific intent to kill, took a substantial step toward the commission of murder, and (2) that the defendant, *acting with the specific intent that the killing occur*, knowingly or intentionally aided, induced, or caused the accomplice to commit the crime of attempted murder.

*Bethel v. State*, 730 N.E.2d 1242, 1246 (Ind. 2000) (emphases added) (citing *Spradlin v. State*, 569 N.E.2d 948, 950 (Ind. 1991)); *see also Williams v. State*, 737 N.E.2d 734, 739 (Ind. 2000) (finding fundamental error where "the jury was never instructed that it had to find that Williams, as a *non-shooting accomplice*, acted with the specific intent to kill the victim") (emphasis original).

[10] Our Supreme Court "has recognized the special need to instruct juries precisely as to the correct level of culpability for attempted murder because of the stringent penalties for that charge and the inherent ambiguity often involved in its proof." *Specht v. State*, 838 N.E.2d 1081, 1089 (Ind. Ct. App. 2005) (citing *Williams*, 737 N.E.2d at 740). Moreover, "both the level of ambiguity and the corresponding need for precise jury instructions significantly increase in a prosecution for *aiding* an attempted murder." *Williams*, 737 N.E.2d at 740 (emphasis added).

[11] We find this Court's decision in *Specht* especially instructive. In that case, Specht and Eric Schmitt decided to rob a convenience store. In the days leading up to the robbery, Specht "talked about stabbing a clerk with a broken glass bottle or hitting him with a hockey puck in a sock." 838 N.E.2d at 1084. When they went to the store to commit the robbery, Specht was armed with a handgun and Schmitt was armed with a shotgun. Specht walked into the store alone with the handgun in his pocket but walked back outside without taking any action. Schmitt took the handgun and gave Specht the shotgun, "started talking about killing people, began jumping around, and then went into the store alone." *Id.* at 1085. After Schmitt went inside, Specht heard a gunshot

and went back into the store. He saw Schmitt shoot a store employee and a customer—the employee died and the customer survived. Schmitt took money from the cash register, Specht grabbed two packs of cigarettes, and they exited the store together. Specht was ultimately convicted of murder, robbery, and attempted murder. His direct appeal was unsuccessful, *Specht v. State*, 734 N.E.2d 239 (Ind. 2000), and he later filed a petition for post-conviction relief. The post-conviction court denied his petition and he appealed.

[12] On appeal, Specht raised multiple issues, including ineffective assistance of trial counsel for failure to object to the jury instructions as they related to accomplice liability for attempted murder. Specifically, Specht argued that the instructions were fundamentally erroneous because they did not inform the jury that it had to find that Specht intended that the customer be killed to find him guilty of attempted murder on an accomplice liability theory. This Court analyzed the jury instructions as follows:

- Instruction Number Five related to attempted murder and informed the jury that it had to find that Specht acted with the specific intent to commit murder. But "[w]hile the instruction does mention specific intent, it was phrased in terms of Specht being the principal, i.e., the shooter, rather than the accomplice." *Specht*, 838 N.E.2d at 1090.

- Instruction Number Ten, which related to accomplice liability, "does not require the jury to find that Specht specifically intended that [the customer] be killed *when* he knowingly or intentionally aided Schmitt in the commission of attempted murder." *Id.* at 1090-91 (emphasis original).

This Court concluded that the trial court's "failure to instruct the jury on this essential element of accomplice liability for attempted murder" was erroneous. *Id.* at 1090 (citing *Woodson v. State*, 767 N.E.2d 1022, 1028-29 (Ind. Ct. App. 2002) (holding that accomplice liability instruction lacking "specific intent to kill" language, even when combined with separate attempted murder instruction which includes "specific intent to murder" language, does not adequately inform jury of need to find the accomplice had the specific intent to kill when he took the steps to help the principal)).

[13] The State contended that even if the instructions were erroneous, any error was harmless. And this type of error is, indeed, harmless "where the defendant's intent was not at issue during trial." *Specht*, 838 N.E.2d at 1091. But this Court found that Specht's intent was at issue, inasmuch as both of his defenses—that he abandoned his intent to rob the store and that he only remained in the store because he thought Schmitt would kill him if he tried to leave—"go directly to Specht's intent that [the customer] be killed." *Id.* Therefore, the error was not harmless. This Court found that trial counsel was ineffective for failing to object to the instructions and tender a proper instruction regarding accomplice liability, reversed the denial of his petition for post-conviction relief, and vacated the attempted murder conviction. *Id.* at 1091-92.

## B. Ivy's Case

[14] We find Ivy's case strikingly similar to *Specht*. Here, as in *Specht*, Instruction Three related to attempted murder and informed the jury that it had to find that

Ivy acted with the specific intent to commit murder. But while the instruction does mention specific intent, it was phrased in terms of Ivy being the principal actor, i.e., the one who stabbed the victim, rather than the accomplice. And Instruction Nine, which related to accomplice liability, did not require the jury to find that Ivy specifically intended that the victim be killed *when* he knowingly or intentionally aided Russell in the commission of attempted murder.[1] The State argues that the combined effect of Instructions Three and Nine satisfies the requirements of *Bethel*, but *Specht* and *Woodson* clearly compel us to reach the opposite conclusion. Here, as in *Specht* and *Woodson*, the trial court's failure to instruct the jury on the essential element of accomplice liability for attempted murder constitutes error.

[15] The State argues that even if the instructions were erroneous, any error was harmless. As in *Specht*, the State contends that Ivy's intent "was never seriously in dispute," so Ivy was not prejudiced as a result of the error. Appellee's Br. p. 13.

[16] We disagree. In fact, the post-conviction court, which also presided over the trial, found as a matter of fact that Ivy's intent was "a central issue at trial[.]" Appellant's PCR App. Vol. II p. 93. The record reveals that, while Ivy held a gun on Drake while Russell stabbed Clark, there was no direct evidence of a pre-existing plan between Ivy and Russell, no direct evidence that Ivy had

---

[1] Ivy concedes that both instructions are correct statements of the law. He merely argues that they are *incomplete*, as they omit an instruction in line with *Bethel*.

intended to commit a crime in Clark's home, no direct evidence that Ivy knew or suspected that Russell would stab Clark, and no direct evidence that Ivy specifically intended for Russell to kill Clark. Ivy's entire defense at trial was premised on his intent, and his trial counsel devoted almost the entirety of her closing argument to that issue. It is apparent that, contrary to the State's argument, Ivy's intent was squarely at issue. Under these circumstances, as in *Specht*, we simply cannot conclude that the instructional error was harmless.

[17] By failing to object to the attempted murder and accomplice liability instructions as given and by failing to tender a proper instruction, Ivy's trial counsel's performance at trial fell below an objective standard of reasonableness. Moreover, we find that there is a reasonable probability that had trial counsel objected to the instructions as given and tendered the appropriate instruction, the result of Ivy's trial on the attempted murder charge may have been different. We therefore reverse the denial of the petition for post-conviction relief, vacate Ivy's conviction for attempted murder, and remand for further proceedings.[2]

---

[2] Because we find in favor of Ivy on the issue of assistance of trial counsel, we will not also address his argument related to appellate counsel. But we echo the *Specht* Court "that there is a reasonable probability that our Supreme Court would have reversed [Ivy's] attempted murder conviction if his counsel had raised the accomplice liability jury instruction issue as fundamental error on appeal, particularly given that the Court announced its decision in *Bethel*, which clarified the elements required for an attempted murder conviction in the accomplice liability context," and this Court announced its decisions in *Specht* and *Woodson*, over a decade before Ivy's direct appeal. *Specht*, 838 N.E.2d at 1096 n.8.

[18]    The judgment of the post-conviction court is reversed and remanded for further

proceedings, and Ivy's conviction for attempted murder is vacated.


Brown, J., concurs.
Riley, J., dissents with a separate opinion.

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Edward Ivy, | Court of Appeals Case No. |
| *Appellant-Defendant,* | 82A04-1711-PC-2506 |
| v. | |
| State of Indiana, | |
| *Appellee-Plaintiff* | |

**Riley, Judge, dissenting.**

[19] I agree with the post-conviction court that Edward Ivy (Ivy) is not entitled to post-conviction relief because his trial counsel was not ineffective in failing to object to the jury instructions as given. When read together, I find that the jury instructions sufficiently apprised the jury of the essential elements necessary to convict Ivy of attempted murder under an accomplice liability theory. Therefore, I dissent from the majority opinion.

[20] A trial court "commits fundamental error when i[t] fails to instruct the jury that in order to find an accomplice guilty of attempted murder, it must find that the

accomplice possessed the specific intent to kill when he knowingly or intentionally aided, induced or caused the principal to commit the crime of attempted murder." *Specht v. State*, 838 N.E.2d 1081, 1089 (Ind. Ct. App. 2005), *trans. denied*. In the case at hand, Jury Instruction Number 9 specified that "[b]efore you can convict [Ivy] as an accessory[,] the State must prove the elements of the crime and that [Ivy] knowingly or intentionally aided another to commit the crime." (Appellant's Direct Appeal App. p. 47). Thus, to find the elements of the crime satisfied, the jury necessarily had to determine that Ivy "[a]ct[ed] with the specific intent to kill" *and* that he "knowingly or intentionally aided another." (Appellant's Direct Appeal App. pp. 39, 47). Accordingly, I would affirm the post-conviction court because "any failing in the first part of the [accomplice liability] jury instruction [which fails to include the specific intent element] is cured when the instruction is read as a whole." (Appellant's PCR App. Vol. II, p. 88).[3]

---

[3] Therefore, although not addressed by the majority opinion, I would also find that Ivy's appellate counsel did not render ineffective assistance by declining to raise as an issue that the trial court's jury instructions amounted to fundamental error.