Ryan M. SPECHT, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 82A05–0501–PC–45.

Court of Appeals of Indiana.

Dec. 12, 2005.

Transfer Denied Feb. 21, 2006.

Katharine C. Liell, Stacy R. Uliana, Liell & McNeil, Bloomington, for Appellant.

Steve Carter, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Ryan Specht appeals the post-conviction court's partial denial of his petition for post-conviction relief. Specifically, Specht contends that the post-conviction court erred by finding that his counsel were not ineffective either at trial or on appeal in his prosecution on charges of murder, attempted murder, and robbery.[1] Finding that Specht's counsel were ineffective at the trial level regarding the attempted murder charge, we reverse that conviction. Because his counsel were otherwise not ineffective, we affirm the post-conviction court in all other respects.

### Facts and Procedural History

In the early part of 1998, Specht received marijuana from Brian Powers and promised to pay him $100.00. Specht then spoke with several different people about the possibility of robbing a gas station in order to pay his drug debt. In particular, Specht talked about stabbing a clerk with a broken glass bottle or hitting him with a hockey puck in a sock. One night, Specht went with his girlfriend, Michelle Evans, to the house where one of Evans' friends, Eric Schmitt, lived. While Specht and Evans were at the house, Schmitt showed them a handgun, and the three discussed robbing a convenience store. Evans and Schmitt specifically suggested robbing Motomart, a gas station/convenience store. The three eventually left the house; Specht had the handgun, and Schmitt had a shotgun. The group drove around in Evans' car for approximately twenty-five minutes before parking in a gravel lot one-half mile from Motomart.

Schmitt, Specht, and Evans walked to Motomart, and Specht walked in alone with the handgun in his pocket, planning to rob the store. Specht brought a drink to the cashier but then left the drink on the counter and walked out of the store. Outside, Schmitt took Specht's gloves and the handgun and handed the shotgun to

---

1. The same two attorneys that represented Specht at trial also represented him on appeal.

Specht. Schmitt started talking about killing people, began jumping around, and then went into the store alone. While Specht was outside, he heard a gunshot from inside and went back into the store with the shotgun. Once inside the store, Specht saw Schmitt shoot Charlie Simpson, the store clerk. Schmitt shot Simpson three times before running across the store and shooting a customer, Brent Tracy. After Schmitt shot Tracy, he ran to one of the cash registers and began taking money. Specht attempted to open the other cash register but could not. Specht then grabbed two packs of cigarettes, and he and Schmitt ran to the car, where Evans was waiting, and sped off. After Specht and Schmitt left, Tracy called the police. Tracy survived a gunshot wound to the side of the head and a fractured jawbone, but Simpson was pronounced dead at the scene.

After leaving Motomart, Specht, Schmitt, and Evans drove to Eugene Barker's house. Schmitt and Evans eventually left, and Specht remained at the house with Barker. Specht tried to sell the handgun to Barker, and he told Barker that three or four shots had been fired from it earlier that night. In the early morning hours of the next day, Specht went to Powers' house and paid him $97.00 or $98.00 of the robbery money for the marijuana.

Later the next day, police questioned Specht about the incident, and Specht admitted his participation in the robbery. The State charged Specht with murder, felony murder, robbery as a Class A felony, and attempted murder. On August 5, 1998, a jury found Specht guilty of all four charges, and the trial court entered judgment against Specht for murder, robbery,

and attempted murder.[2] The court sentenced Specht to sixty years on the murder charge, thirty-five years on the robbery charge, and thirty-five years on the attempted murder charge, and it ordered all three sentences to run concurrently, for a total executed sentence of sixty years. On direct appeal, Specht's counsel raised two issues, namely, that the trial court erred in denying Specht's motion for a change of venue and in allowing the State to impeach Specht with evidence of his guilty plea in another matter. On August 17, 2000, the Indiana Supreme Court affirmed Specht's convictions and sentence. *Specht v. State*, 734 N.E.2d 239 (Ind.2000).

Then, on October 17, 2002, Specht filed his Amended Petition for Post–Conviction Relief. Specht alleged that his counsel had performed deficiently at trial by: (1) failing to object to "multiple improper jury instructions" and to tender "proper" jury instructions; (2) failing to object to "the State's misstatement of law" during closing arguments; (3) failing to move to dismiss the charging information; and (4) failing to assert "proper grounds" to support counsel's motion for judgment on the evidence. Appellant's App. p. 108. According to Specht, there is a reasonable probability that the result of his trial would have been different had his counsel done so.

In addition, Specht alleged that his counsel had performed deficiently on appeal by: (1) failing to argue that counsel had been ineffective at trial; (2) failing to raise the double jeopardy violation created by the entry of judgments of conviction and the imposition of sentences on both the Class A felony robbery and the Murder; (3) failing to raise the trial court's

---

**2.** The trial court did not enter judgment on the felony murder conviction because of double jeopardy concerns.

failure to grant a mistrial as reversible error; and (4) failing to include all possible grounds for review on direct appeal. *Id.* at 109. Specht contends that there is a reasonable probability that the result of his appeal would have been different had his counsel done so.

After the State filed a brief answer to Specht's amended petition, each party then submitted a supporting memorandum and proposed findings of fact, conclusions of law, and judgment. On December 16, 2004, the post-conviction court entered findings of fact, conclusions of law, and judgment. The court granted relief on one of the issues raised by Specht in his petition, finding that if Specht's counsel had argued on appeal that Specht's convictions and sentences for both murder and robbery as a Class A felony violate principles of double jeopardy, the Class A felony would have been reduced or the murder conviction would have been vacated. As such, the court ordered that Specht's conviction for robbery as a Class A felony be vacated, that judgment of conviction be entered for robbery as a Class C felony, and that Specht be re-sentenced appropriately. In all other respects the court denied Specht's petition for post-conviction relief. It is from this partial denial of post-conviction relief that Specht now appeals.

### Discussion and Decision

A defendant who has exhausted the direct appeal process may challenge the correctness of his convictions and sentence by filing a post-conviction petition. *Carew v. State,* 817 N.E.2d 281, 285 (Ind. Ct.App.2004), *trans. denied.* Post-conviction procedures do not provide an opportunity for a "super-appeal"; rather, they create a narrow remedy for subsequent collateral challenges to convictions that must be based on grounds enumerated in the post-conviction rules. *Id.* Generally,

"complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective assistance of counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Sanders v. State,* 765 N.E.2d 591, 592 (Ind.2002). Post-conviction proceedings are civil proceedings, so a defendant must establish his claims by a preponderance of the evidence. *Carew,* 817 N.E.2d at 285.

A petitioner who appeals the denial of post-conviction relief faces a rigorous standard of review. *Benefiel v. State,* 716 N.E.2d 906, 911 (Ind.1999), *reh'g denied.* The reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court. *Blunt–Keene v. State,* 708 N.E.2d 17, 19 (Ind.Ct.App.1999). Furthermore, while we do not defer to the post-conviction court's legal conclusions, we accept its factual findings unless they are clearly erroneous. *Carew,* 817 N.E.2d at 285. To prevail on appeal, the petitioner must establish that the evidence is uncontradicted and leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Prowell v. State,* 741 N.E.2d 704, 708 (Ind. 2001).

In this appeal, Specht argues that the post-conviction court erred by failing to find that his counsel were ineffective on all of the issues that he raised in his petition. As with his petition for post-conviction relief, the claimed errors fall into two categories: ineffective assistance of trial counsel and ineffective assistance of appellate counsel.

### I. Ineffective Assistance of Trial Counsel

Specht contends that his counsel were ineffective at trial. We review claims of ineffective assistance of trial counsel under

the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied. Carew*, 817 N.E.2d at 285–86. First, the petitioner must demonstrate that counsel's performance was deficient because it fell below an objective standard of reasonableness and denied the petitioner the right to counsel guaranteed by the Sixth Amendment to the United States Constitution. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002), *reh'g denied.*

Second, the petitioner must demonstrate that he was prejudiced by his counsel's deficient performance. *Wentz v. State*, 766 N.E.2d 351, 360 (Ind.2002), *reh'g denied.* To demonstrate prejudice, a petitioner must demonstrate a reasonable probability that the result of the proceeding would have been different if his counsel had not made the errors. *Id.* A probability is reasonable if our confidence in the outcome has been undermined. *Id.* If we can easily dismiss an ineffective assistance claim based upon the prejudice prong, we may do so without addressing whether counsel's performance was deficient. *Id.*

 We presume that counsel is competent and provided adequate assistance, and the defendant must present strong and convincing evidence to rebut this presumption. *Smith*, 765 N.E.2d at 585; *Winters v. State*, 698 N.E.2d 1197, 1198 (Ind.Ct.App.1998), *reh'g denied, trans. denied.* We give deference to counsel's choice of strategy and tactics. *Smith*, 765 N.E.2d at 585. "Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Id.* And because we presume competence on the part of a lawyer, an action or omission that is within the range of reasonable attorney behavior can only support a claim of ineffective assistance if that presumption is overcome by specific evidence as to the performance of the particular lawyer. *Morgan v. State*, 755 N.E.2d 1070, 1074 (Ind.2001).

Specht raises three issues concerning the performance of his counsel at trial. Specifically, he contends that his counsel erred by failing to: (1) object to the jury instructions on accomplice liability on the proper grounds and tender proper instructions; (2) object to the prosecutor's alleged "misstatements of law"; and (3) challenge the sufficiency of the evidence supporting his attempted murder and murder convictions through a motion for judgment on the evidence. We address each issue in turn.

### A. Accomplice Liability Instructions

Specht acknowledges that his counsel did make objections to the accomplice liability jury instructions at trial. However, he alleges that the objections were made on improper grounds and were therefore inadequate, and that if his counsel had made the proper objections and tendered the proper instructions, there is a reasonable probability that the objections would have been sustained, the tendered instructions would have been given, and the result of his trial would have been different.

#### 1. "Knowingly or Intentionally" Requirement

 Specht contends that his counsel were ineffective in failing to object to the accomplice liability instructions on the ground that they violated his due process rights. Due process requires the State to prove every element of an offense beyond a reasonable doubt. *Sandstrom v. Montana*, 442 U.S. 510, 524, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Because Specht was prosecuted on an accomplice liability theory, the State was required to prove that Specht knowingly or intentionally aided, induced, or caused Schmitt to commit the offenses. *See* Ind.Code § 35–41–2–4.

Specht argues that the accomplice liability instructions relieved the State of its burden of proving that he knowingly or intentionally aided Schmitt. The instructions relating to accomplice liability provided:

10. A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense.

To "aid" under the law is to knowingly aid, support, help or assist in the commission of a crime. It is knowingly doing some act to render aid to the actual perpetrator of the crime, thought [sic] without taking a direct share in its commission.

Proof of the defendant's presence at the crime scene, failure to oppose the commission of the crime, companionship with the person committing the offense, and conduct before, during and after the offense may be considered in determining whether aiding may be inferred.

Appellant's Supp.App. p. 1432.

11. When two or more persons combine to commit a crime, each is criminally responsible for the acts of his or her confederates committed in the furtherance of the common design, the act of each being the act of all. [ . . . ].

*Id.* at 1433 (section on abandonment omitted).

18. A person engaged in the commission of an unlawful act is legally responsible for all of the consequences which may naturally or necessarily flow from it; thus, if a person combines and confederates with others to accomplish an illegal purpose, he is criminally liable for everything done by his confederate, which flows incidentally in the nature [sic] consequences, even though it was

not intended as part of the original design or common plan.

*Id.* at 1455.

19. An accomplice does not need to commit each element of an offense if the accomplice acts in concert with another individual who commits the requisite acts. The acts of one accomplice are imputed to all other accomplices.

*Id.* at 1457. According to Specht, if his counsel had objected to the instructions on due process grounds, there is a reasonable probability that the objection would have been sustained and the result of trial would have been different.

 Specht's contention that his counsel failed to object to the instructions on the proper grounds is similar to a claim that one's counsel failed to object at all. "When an ineffective assistance of counsel claim is based on the trial counsel's failure to make an objection, the [petitioner] must show that a proper objection would have been sustained by the trial court." *Lambert v. State*, 743 N.E.2d 719, 732 (Ind. 2001), *reh'g denied.* Specht has failed to make that showing.

 Specht contends that Instruction Nos. 11, 18, and 19 "relieved the State of its burden of proving beyond a reasonable doubt that Specht . . . knew he was aiding in the commission of a robbery, a murder, and an attempted murder" by "imput[ing] Schmitt's intent to rob and murder onto Specht." Appellant's Br. p. 17. If Instruction Nos. 11, 18, and 19 were the only instructions given on accomplice liability, we might agree with Specht. However, the jury was also given Instruction No. 10, which begins, "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense." This language is taken directly from the accomplice liability statute. *See* I.C. § 35–41–2–4. "Jury instructions are to be considered as a whole and in

reference to each other." *Edgecomb v. State*, 673 N.E.2d 1185, 1196 (Ind.1996), *reh'g denied.* Therefore, while not all four of the instructions relating to accomplice liability mentioned the required accomplice *mens rea*, when read as a whole, the instructions put the jury on sufficient notice that it was required to find that Specht knowingly or intentionally aided Schmitt in the commission of the crimes in order to find him guilty of the crimes as an accomplice. Because an objection to the accomplice liability instructions on due process grounds would not have been sustained, Specht's counsel were not ineffective for failing to object.[3]

### 2. Attempted Murder

Specht next argues that the trial court's instructions were erroneous as they related to accomplice liability for attempted murder. Specifically, he contends that his counsel were ineffective in failing to object to the attempted murder and accomplice liability jury instructions on the ground that the instructions did not inform the jury that it had to find that Specht intended that Tracy be killed in order to find him guilty of attempted murder on an accomplice liability theory and in failing to tender a satisfactory instruction.

In addition to the accomplice liability instructions set out above, the jury was also instructed on the elements of attempted murder. Instruction No. 5 states, in pertinent part:

To convict the defendant, Ryan Specht, [of attempted murder], the State must have proved each of the following elements: The defendant ... 1. on or about March 10, 1998, 2. acting with the specific intent to commit murder, to-wit: intentionally killing Brent Tracy, 3. did intentionally shoot Brent Tracy with a handgun, 4. which conduct constituted a substantial step toward commission of the intended crime of murder.

Appellant's Supp.App. p. 1427.

The Indiana Supreme Court has recognized the special need to instruct juries precisely as to the correct level of culpability for attempted murder because of the stringent penalties for that charge and the inherent ambiguity often involved in its proof. *See Hopkins v. State*, 759 N.E.2d 633, 637 (Ind.2001); *Williams v. State*, 737 N.E.2d 734, 740 (Ind.2000). Furthermore, "both the level of ambiguity and the corresponding need for precise jury instructions significantly increase in a prosecution for *aiding* an attempted murder." *Williams*, 737 N.E.2d at 740 (emphasis added). Specifically, a trial court commits fundamental error when if fails to instruct the jury that in order to find an accomplice guilty of attempted murder, it must find that the accomplice possessed the specific intent to kill when he knowingly or intentionally aided, induced or caused the principal to commit the crime of attempted murder. *Id.* Such error is commonly referred to as *"Spradlin* error." *See Spradlin v. State*, 569 N.E.2d 948 (Ind. 1991).

**3.** We disagree with Specht that his case is distinguishable from *McCorker v. State*, 797 N.E.2d 257 (Ind.2003), in which our Supreme Court upheld the use of an instruction that combined many of the elements of Instruction Nos. 11, 18, and 19. Specht notes that his challenge to the accomplice liability instructions in this case is that they instructed the jury to presume his intent from the consequences of *Schmitt's* actions, while in

*McCorker* the accomplice-defendant argued that the instruction created a mandatory presumption of intent arising from the consequences of his *own* actions. This distinction does not alter our conclusion. As in *McCorker*, if any presumption was created in this case, it was permissive, not mandatory, and simply allowed the jury to "find or presume liability or guilt if it found [Specht] aided [Schmitt]." *See id.* at 266.

The State asserts that there was no *Spradlin* error in Specht's case, i.e., the trial court's instructions sufficiently apprised the jury that it was required to find that Specht, as an accomplice, intended that Tracy be killed. In the alternative, the State argues that even if there was *Spradlin* error, such error is harmless, and therefore Specht's counsel were not ineffective for failing to object and to tender an alternative instruction, because Specht's intent to kill Tracy "was never seriously disputed." Appellee's Br. p. 23.

Applying our Supreme Court's rationale from *Williams*, we conclude that the trial court's instructions did constitute *Spradlin* error. In *Williams*, the defendant was convicted of attempted murder as an accomplice and later petitioned for post-conviction relief. In granting the defendant's petition, the Court found that the jury had been "misinformed in two critical respects, the combination of which unacceptably lessened the State's burden of proof. First and foremost, the jury was not properly instructed as to the basic elements of attempted murder.[4] ... Second, the jury was never instructed that it had to find that [the defendant], as a *non-shooting accomplice*, acted with the specific intent to kill the victim." *Williams*, 737 N.E.2d at 739 (emphasis in original). The Court held "that the trial court committed fundamental error in not instructing the jury that it had to find that [the defendant] possessed the specific intent to kill when he knowingly or intentionally aided, induced or caused his backseat accomplice to commit the crime of attempted murder." *Id.* at 740.

The State attempts to distinguish *Williams* by emphasizing that the trial court's instruction on attempted murder in this case, unlike the instruction in *Williams*, requires the jury to find that the shooter had the specific intent to kill. While we agree with the State that the *attempted murder* instruction in this case does properly instruct on the basic elements of attempted murder, the second problem that our Supreme Court identified in *Williams* is present here; that is, the jury was never specifically instructed that it had to find that Specht, as a non-shooting accomplice, specifically intended that the victim be killed when he *aided* in the crime of attempted murder.

Instruction No. 5 provides, in pertinent part: "To convict ... Specht [of attempted murder], the State must have proved each of the following elements: The defendant ... 2. *acting with the specific intent to commit murder*, to-wit: intentionally killing Brent Tracy, 3. did intentionally shoot Brent Tracy with a handgun[.]" Appellant's Supp.App. p. 1427 (emphasis added). While the instruction does mention specific intent, it was phrased in terms of Specht being the principal, i.e., the shooter, rather than the accomplice. Also, Instruction No. 9 explains that "Attempt is a crime of specific intent" and that "Specific intent is a material element of the crime charged," but it makes no mention of accomplice liability. *Id.* at 1431. Finally, Instruction No. 10 instructs: "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense." *Id.* at 1432. However, the instruction does not require the jury to find that Specht specifically intended that Tracy be killed *when* he knowingly or in-

---

**4.** The attempted murder instruction in *Williams* stated, in pertinent part, that: "To convict the defendant of the crime of attempted murder, the State must have proved the following elements: 1. The defendant *know-ingly or intentionally* [;] 2. took a substantial step to accomplish[;] 3. a *knowing or intentional killing* of Scott Spotten." *Williams*, 737 N.E.2d at 734 (emphasis in original).

tentionally aided Schmitt in the commission of attempted murder. *See Williams,* 737 N.E.2d at 740. The trial court's failure to instruct the jury on this essential element of accomplice liability for attempted murder constitutes *Spradlin* error. *See id; see also Woodson v. State,* 767 N.E.2d 1022, 1028–29 (Ind.Ct.App.2002) (holding that accomplice liability instruction lacking "specific intent to kill" language, even when combined with separate attempted murder instruction which includes "specific intent to murder" language, does not adequately inform jury of need to find the accomplice had the specific intent to kill when he took the steps to help the principal), *aff'd on reh'g,* 778 N.E.2d 475 (Ind.Ct.App.2002).[5]

The State argues that even if the instructions as given constitute *Spradlin* error, the error is harmless because Specht's intent "was never seriously disputed." Appellee's Br. p. 23. It is well-established that *Spradlin* error is not fundamental where the defendant's intent was not at issue during trial. *Hopkins,* 759 N.E.2d at 638. In this case, Specht's intent was at issue. His two defenses at trial were that

he abandoned his intent to rob the store and that he remained in the store out of necessity, i.e., because he thought that Schmitt would kill him if he tried to leave. Both of these defenses go directly to Specht's intent that Tracy be killed. We cannot agree that the *Spradlin* error in Specht's case was harmless.

 Turning to the ineffective assistance of counsel factors from *Strickland,* we hold that in failing to object to the attempted murder and accomplice liability instructions as given and in failing to tender the proper instruction, Specht's counsel's performance at trial fell below an objective standard.[6] Furthermore, Specht has shown that his trial counsel's performance was "so deficient and prejudicial that he was denied a fair trial" on the attempted murder charge. *See Davis v. State,* 675 N.E.2d 1097, 1100 (Ind.1996). Specifically, the instructions as given allowed the jury to find Specht guilty of attempted murder without first finding that he specifically intended that Tracy be killed when he aided Schmitt. There is a reasonable probability that had Specht's trial counsel objected to the instructions as given and

---

**5.** After Specht's trial, the Indiana Judges Association's Criminal Instructions Committee drafted a pattern instruction applicable specifically to accomplice liability for attempted murder. The instruction, entitled "Aiding, Inducing or Causing Attempted Murder," integrates the essential elements of the attempted murder and accomplice liability statutes, thereby emphasizing the requirement that both the shooter *and* the accomplice have the specific intent to kill and satisfying the strict requirements of *Williams.* Ind. Pattern Jury Instructions—Criminal No. 2.11(a).

**6.** The post-conviction court based several of its findings that Specht's counsel were not ineffective at trial on the fact that *Bethel v. State,* 730 N.E.2d 1242 (Ind.2000), had not been decided at the time of Specht's trial, stating: "[a]n ineffective assistance claim cannot be based on counsel's failure to argue the legal reasoning of cases not yet decided at

the time of trial." Appellant's App. p. 209, 222 (citing *Shaffer v. State,* 674 N.E.2d 1, 7 (Ind.Ct.App.1996), *trans. denied*). In *Bethel,* our Supreme Court held that in order to convict a defendant of attempted murder as an accomplice, the State must prove that the defendant had the specific intent to kill when he knowingly or intentionally aided, induced, or caused the principal to commit the crime of attempted murder. 730 N.E.2d at 1246. However, the Court quickly clarified that "*Bethel* did not announce a new rule of criminal procedure but rather explained what the State was already required to prove to gain a conviction for attempted murder under a complicity theory or otherwise: '[T]he same specific intent to kill must be shown for an attempted murder as for the crime of murder.' *Zickefoose v. State,* 270 Ind. 618, 620, 388 N.E.2d 507, 509 (1979)." *Williams,* 737 N.E.2d at 740 n. 16.

tendered the appropriate instruction, the result of Specht's trial on attempted murder may have been different. We therefore reverse the denial of post-conviction relief and vacate Specht's conviction for attempted murder.

### 3. Elements of Crimes Instructions

■ Specht also asserts that his counsel were ineffective at trial in failing to object to the accomplice liability instructions on the ground that they, when read along with the instructions regarding the elements of the crimes with which he was charged, misled the jury by drawing its focus away from Specht's knowledge and actions and toward Schmitt's actions. All of the elements instructions were phrased in terms of Specht being the principal. For example, Instruction No. 2, on murder, provided: "To convict the defendant, Ryan Michael Specht, [in Count] I, the State must have proved [that] ...: The defendant ... killed ... another human being, Charles O. Simpson." Appellant's Supp.App. p. 1422. According to Specht, there is a reasonable probability that the outcome of the trial would have been different if his counsel would have objected to the accomplice liability instructions as misleading.

Specht relies on this Court's holding in *Peterson v. State,* 699 N.E.2d 701 (Ind.Ct. App.1998). In *Peterson,* the trial court instructed the jury on accomplice liability by simply reciting the accomplice liability statute. On appeal, we held that the instruction "failed to focus on the knowledge and conduct of the defendant and wholly failed to instruct that the defendant must have engaged in some affirmative conduct in aiding or inducing the offense." *Id.* at 707. In this case, the trial court gave the jury not only an instruction quoting from the accomplice liability statute, but also three other accomplice liability instructions

that focused on the knowledge and the affirmative conduct of Specht, the accomplice.

Instruction No. 10 singles out people who "knowingly or intentionally" aid another in the commission of an offense, defines what it means to "aid," and states, *"Proof of the defendant's ... conduct* before, during and after the offense may be considered in determining whether aiding may be inferred." Appellant's Supp.App. p. 1432 (emphasis added). Instruction No. 11 outlines the criminal responsibility of *each* person when "two or more persons combine to commit a crime." *Id.* at 1433. Instruction No. 18 instructs that when *a person combines and confederates with others to accomplish an illegal purpose,* that person is criminally liable for everything done by his confederate. *Id.* at 1455 (emphasis added). Finally, Instruction No. 19 explains that, "An accomplice does not need to commit each element of an offense *if the accomplice acts in concert* with another individual who commits the requisite acts." *Id.* at 1457 (emphasis added). We are not persuaded by Specht's contention that the instructions misled the jury by failing to focus on Specht's knowledge and conduct. As such, Specht's counsel were not ineffective for failing to object to the instructions on those grounds.

■ Specht also argues that his counsel were ineffective for failing to tender "accomplice liability element instruction[s]" which combined the elements of the accomplice liability statute with the elements of the crimes charged. Appellant's Br. p. 26. "It is well established that a person can be charged as a principal and convicted as an accomplice." *Clark v. State,* 732 N.E.2d 1225, 1230 (Ind.Ct.App. 2000). "The accomplice liability statute does not set forth a separate crime, but merely provides a separate basis of liability for the crime that is charged." *Cowan*

*v. State,* 783 N.E.2d 1270, 1276 (Ind.Ct. App.2003), *trans. denied.* "The individual who aids another person in committing a crime is as guilty as the actual perpetrator." *Vandivier v. State,* 822 N.E.2d 1047, 1054 (Ind.Ct.App.2005), *trans. denied.* In other words, "a defendant may be convicted as a principal upon evidence that he aided or abetted in the perpetration of the charged crime." *Id.* "The accomplice need not participate in each and every element of the crime in order to be convicted of it." *Id.*

Based on the foregoing principles we cannot say that a trial court errs by giving separate element and accomplice liability instructions rather than giving hybrid "accomplice liability element instructions" that combine the elements of accomplice liability with the elements of the crimes charged.[7] Therefore, Specht's counsel was not ineffective for failing to tender such instructions.

### B. Prosecutor's Statements

Specht further contends that his counsel were ineffective at trial for failing to object to what Specht characterizes as "the State's repeated misstatements of law." Appellant's Br. p. 31. Specifically, Specht asserts that the prosecutor "repeatedly told the jury that they could impute Schmitt's actions onto Specht ... regardless of [Specht's] intent," thereby "reliev[ing] himself of his burden of proving Specht knew he was aiding in each offense for which he was accused, as required by I.C. § 35–41–2–4." *Id.* at 32, 34. According-

ing to Specht, there is a reasonable probability that if his trial counsel had objected to the prosecutor's statements, the objections would have been sustained and the jury would have found him not guilty on all four counts.

This argument is essentially an extension of Specht's argument that many of the jury instructions were misstatements of accomplice liability law that relieved the State of proving Specht's *mens rea.* Specht asserts the following: (1) "From beginning to end of the trial, the State built its case on the instructions relieving the State of its burden of proving Specht's intent," Appellant's Br. p. 31; (2) "Overall, in closing and rebuttal, at least nine different times, the prosecutor recited the jury instructions that acts of one are imputed on all regardless of intent," *Id.* at 33; (3) "As the prosecutor stated, when 'you apply the evidence to the instructions that the Judge gives you, you'll realize that the case is simple and it is a lock clinch.' ... The instructions incorrectly took the central issue of intent away from the jury," *Id.* at 37; and (4) "As the prosecutor told the jury, the instructions make this case a 'lock clinch,' " Appellant's Reply Br. p. 10. This argument amounts to a redundant, indirect attack on the jury instructions, the propriety of which we addressed above. We need not address it again simply because it has been reframed in terms of prosecutorial misconduct. Furthermore, to the extent there was any impropriety in the prosecutor's statements of law, it was

---

**7.** This holding may seem contradictory to our holding above that the instructions regarding accomplice liability for attempted murder were inadequate. However, we reverse Specht's attempted murder conviction not because the jury was instructed separately on the elements of attempted murder and accomplice liability, but because the instructions *as a whole* failed to instruct the jury on an essential element of Specht's crime, i.e., the specif-

ic intent of an accomplice to attempted murder. We again note that Indiana's appellate courts have singled out attempted murder instructions for special scrutiny. *See Richeson v. State,* 704 N.E.2d 1008, 1010 (Ind.1998) (*Spradlin* rule does not extend to attempted battery); *Henderson v. State,* 825 N.E.2d 983, 987 (Ind.Ct.App.2005) (*Spradlin* rule does not apply to attempted robbery), *trans. denied.*

*de minimis* and cured by the trial court's jury instructions, which, with the exception of those concerning accomplice liability for attempted murder, we found to be proper. *See Flowers v. State,* 738 N.E.2d 1051, 1059 (Ind.2000) (finding that any impropriety in the prosecutor's closing argument was *de minimis* and overcome by jury instructions).

### C. Sufficiency of the Evidence

Specht also asserts that the post-conviction court erred in finding that his counsel were not ineffective at trial for failing to challenge the sufficiency of the evidence supporting the attempted murder and murder charges through a motion for judgment on the evidence.

#### 1. Attempted Murder

■ As to the attempted murder charge, because we reverse Specht's conviction due to instructional error, we need not address Specht's separate claim that his counsel were ineffective for failing to challenge the sufficiency of the evidence supporting his attempted murder conviction through a motion for judgment on the evidence. However, "double jeopardy does not bar retrial when there is sufficient evidence to support a conviction." *Edwards v. State,* 773 N.E.2d 360, 364 (Ind.Ct.App.2002), *trans. denied.* Therefore, we address the sufficiency of the evidence supporting Specht's attempted murder conviction in case the State seeks to retry him.

When reviewing a challenge to the sufficiency of evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jones v. State,* 783 N.E.2d 1132, 1139 (Ind.2003). We look only to the probative evidence supporting the judgment and the reasonable inferences from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* We will uphold the conviction if there is substantial evidence of probative value to support it. *Id.*

■ There is sufficient evidence to support a conviction for attempted murder should Specht be retried. First, there is sufficient evidence to show that Schmitt was acting with the specific intent to kill and that he took a substantial step toward the commission of murder. Before he entered the store, he took the handgun from Specht and was jumping around talking about "killing everybody." Appellant's Supp.App. p. 1260. Also, the fact that Schmitt shot Tracy in the head from point-blank range is sufficient to support an inference that Schmitt had the specific intent to kill and a finding that Schmitt took a substantial step toward the commission of murder. Second, there is sufficient evidence from which a jury could find that Specht knowingly or intentionally aided, induced, or caused Schmitt to commit the crime of attempted murder. Furthermore, based upon his clear knowledge of and participation in Schmitt's conduct, a jury could infer that Specht aided Schmitt with the specific intent that the killing occur.

In the weeks preceding the crime, Specht spoke with several different people about the possibility of robbing a gas station in order to pay his drug debt. In particular, he talked about stabbing a clerk with a broken glass bottle or hitting him with a hockey puck in a sock. On the night of the crime, Specht spoke with Schmitt about robbing a convenience store, and the two agreed to rob Motomart. The two then went to the store together, each carrying a loaded gun. Once at the store, Specht gave Schmitt his gloves and the handgun. Then, after he heard Schmitt fire a shot, Specht went inside and stood at the door, holding the shotgun and silently watching as Schmitt shot two men.

Specht then joined Schmitt in stealing money and cigarettes from the store. After the crime, Specht attempted to sell one of the guns and used some of the money from the robbery to pay off his drug debt.

■ Finally, as to the additional attempted murder element of specific intent to kill, there is evidence that Specht planned to use a weapon to rob a convenience store and that he traveled to Motomart with Schmitt with two loaded guns. Intent may be proven by circumstantial evidence alone, and it may be inferred from the facts and circumstances of the case. *Lykins v. State*, 726 N.E.2d 1265, 1270 (Ind.Ct.App.2000). There is sufficient evidence from which a jury could find that Specht knowingly or intentionally aided Schmitt in the commission of attempted murder and that when he did so, he specifically intended that Tracy be killed. As such, the State is not barred by principles of double jeopardy from retrying Specht for attempted murder. *See Edwards*, 773 N.E.2d at 364.

### 2. Murder

■ Specht concedes that he did not argue to the post-conviction court that his counsel were ineffective at trial for failing to challenge the sufficiency of the evidence supporting his murder conviction through a motion for judgment on the evidence. "[C]laims not advanced until appellant's brief on appeal from the denial of a post-conviction petition for relief are waived." *Canaan v. State*, 683 N.E.2d 227, 235 (Ind.1997). Therefore, Specht has waived this claim of ineffective assistance of counsel.

■ Waiver notwithstanding, we find that the trial court would have denied a motion for judgment on the evidence on Specht's murder charge because there is sufficient evidence to support a finding that Specht knowingly aided Schmitt in his murder of Simpson. In order to convict Specht of murder as an accomplice, the State was required to prove that he knowingly or intentionally aided, induced, or caused Schmitt to commit murder. *See* I.C. § 35-41-2-4. The same facts that were relevant above to Specht's attempted murder conviction are also relevant to Specht's murder conviction. Most importantly, Specht himself testified that when he handed his gloves and the handgun to Schmitt, Schmitt was jumping around talking about "killing everybody." Appellant's Supp.App. p. 1260. After Schmitt entered the store and began shooting, Specht followed and stood at the door, holding a shotgun, as Schmitt continued to fire his weapon, killing Simpson. There is sufficient evidence to support the jury's finding that Specht knowingly aided Schmitt in his murder of Simpson.

### II. Ineffective Assistance of Appellate Counsel

■ Specht also argues that the post-conviction court erred by failing to find his appellate counsel ineffective on several issues. We review claims of ineffective assistance of appellate counsel using the same standard applicable to claims of trial counsel ineffectiveness. *Fisher v. State*, 810 N.E.2d 674, 676–77 (Ind.2004). That is, the defendant must show that appellate counsel was deficient in his performance and that the deficiency resulted in prejudice. *Id.* at 677.

First, Specht contends that his counsel were ineffective for failing to argue on appeal that "the trial court's reading of multiple erroneous jury instructions" constituted fundamental error. Appellant's Br. p. 34. We have already reversed Specht's attempted murder conviction because his trial counsel were ineffective in failing to object to the accomplice liability instructions as they relate to attempted murder

and in failing to tender a proper instruction. Therefore, we need not address the performance of his counsel on appeal regarding that conviction.[8] Furthermore, because we hold that the trial court's other instructions were proper, Specht's counsel were not ineffective in failing to challenge them as fundamental error on appeal.

Second, Specht asserts that his counsel were ineffective for failing to argue on appeal that "the prosecutor's misstatements of law" constituted fundamental error. Appellant's Br. p. 34. As we found no error in this regard, Specht's counsel were not ineffective in failing to raise this issue on appeal.

Third, Specht argues that his counsel were ineffective for failing to challenge the sufficiency of the evidence supporting his attempted murder and murder convictions on appeal. As to Specht's attempted murder charge, we already determined that his conviction must be reversed because of his trial counsel's ineffectiveness, so we need not address the effectiveness of Specht's counsel on appeal. Nonetheless, we note that Specht's counsel were not ineffective for failing to raise the sufficiency of the evidence supporting Specht's attempted murder conviction on appeal because we held above that there is sufficient evidence from which the jury could infer that Specht specifically intended that Tracy be killed.

As to the murder charge, we note that Specht did not argue to the post-conviction court, in his Amended Petition or in his Supporting Memorandum, that his counsel were ineffective for failing to raise the sufficiency of the evidence on appeal. As

such, he waived this issue. In any case, we already found that there is sufficient evidence to support the jury's finding that Specht knowingly aided Schmitt in his murder of Simpson. Therefore, Specht's counsel were not ineffective for failing to raise this issue on appeal.

### Conclusion

Specht's counsel were ineffective at trial in failing to object to the jury instructions given on accomplice liability for attempted murder and in failing to tender a proper instruction. We therefore reverse Specht's conviction for attempted murder. In all other respects we find that Specht's counsel were not ineffective, and we affirm the post-conviction court's partial denial of post-conviction relief.

Affirmed in part, reversed in part.

SULLIVAN, J., and FRIEDLANDER, J., concur.

---

8. However, we note that there is a reasonable probability that our Supreme Court would have reversed Specht's attempted murder conviction if his counsel had raised the accomplice liability jury instruction issue as fundamental error ·on appeal, particularly given that the Court announced its decision in *Bethel,* which clarified the elements required for an attempted murder conviction in the accomplice liability context, two months before its decision in Specht's appeal. *See Specht,* 734 N.E.2d 239; *Bethel,* 730 N.E.2d 1242.